Thank you, Your Honor. May it please the Court, my name is Charles G. Smith. I'm counsel for Plaintiffs' Appellants, and I want to reserve three minutes for rebuttal. You'll have to help keep track of your time. It should be visible to you. Okay, thank you. Yes, it is. Your Honor, this is a straightforward analysis of an unambiguous regulation, unambiguous regulations. Section 520D states that the effective date for billing privileges is the later of the date of filing an enrollment application that was subsequently approved, or the date that the supplier first began furnishing services at a new practice location. The other regulation is Section 540, which says, 540B1, that in the event that billing privileges are deactivated for any reason other than non-submission of a claim, the supplier must submit an enrollment application. Section 540B2 says, in the event that the billing privileges are deactivated for non-submission of a claim, which is what we have here, the provider may recertify that the enrollment information correctly on file with Medicare is correct, but no new enrollment application is required. Counsel, it seems to me that either interpretation requires us to insert something that isn't into the regulation, because what you wanted to say is that it's only new enrollment applications rather than reactivation, which is a revalidated enrollment application. So, it seems to me that it's plausible to read it either your way or the way it has been interpreted. Well, I think if you look at 540B1 and 540B2, there is really an express delineation between the way deactivation should be handled. They make a marked difference between having an application that's deactivated for any reason other than non-submission of a claim, and that definitely requires an enrollment application. And the reason we have, the regulation says we do not need an enrollment application. So, whether you call it a new enrollment application or something else, the regulation itself was very specific that in situations where the only reason you're deactivated is because you didn't submit a claim in a year, there's no reason to have a new enrollment application. What about Section 515, which describes the process of recertification every few years and says that in that context it refers to submitting an enrollment application? And that seems to suggest that, at least in some contexts in the regulations, the term enrollment application is being used more broadly to refer to more than just the thing you file at the very beginning. Well, I think Section 515, if, let's see, that is, I think 515 is just to, 515 is a different regulation that is relatively, or I say relatively new, but it's just to make sure that people keep their information accurate. That is actually, if you fail to comply with 515, that's a specific reason for requiring a new enrollment application. Right, but I think perhaps what Judge Miller is referring to, at least what's important to me, is that it says that the requirement for recertifying must include submission of an enrollment application. Right. And so it seems to encompass the form that is filled out again, and of course it is generally the same form as well. Well, it is a, it's the same form, 855, but it's for different purposes. And I think the key here is that 515 is a separate regulation that does say that if there is this failure to submit every five years information, then yes, you need a new enrollment application. And the courts do say that if you fail to comply with 515, it definitely does create a new effective date for billing. That's different from the way you treat a non-submission of a claim, because in that situation, you haven't done anything wrong. I mean, the idea behind that is not filing every five years, you've done something you weren't supposed to do, so you can get kicked out of the system. But here, non-submission of a billing, you haven't done anything wrong. And so the way the statutes read, by making that demarcation between non-submission of a claim and everything else, including 515, in one case you need an enrollment application, in the other case you do not. Mr. Smith? Yes. If you can keep track, I have sort of three related questions. One's factual, one's legal, and one's the rule of law you want us to announce. Legally, if you could speak to 555, and what I understand is the prohibition on paying anyone without privileges money, it's your responsibility for the services. Factually, could you confirm to me when his first claim was denied? And if he did try to rebut the deactivation, and then going forward, the rule of law question is, is it your position that a doctor could wait as long as 20 years and still request reimbursement? Those are my three questions. Okay. Thank you. So as to Section 555, 555 says that payments are restricted when an account is deactivated or revoked. It doesn't have anything to do with resetting an effective date for billing. And I think it's important that no opinion has ever applied 555 to restrict payments submitted during the deactivation or revocation period. And we actually cited to a case in our brief, this Brenton L. Morgan. And there was an earlier case in Brenton L. Morgan, and that one is 2020, Westlaw 1977123. But both of those cases, the doctor had had his account revoked from 2016 for three years to 2019. And the District Court, when it reviewed this, said the revocation, they thought, ultimately was not proper. And they ordered payment going back from 2016 during the revocation period once the account was reinstated. In fact, the other side argued that 555 applied, and the court said, no, it did not. 555 does not apply to making payments after the account has been restored. So I don't think, Your Honor, that that is an impediment in our case. The other thing is you asked about the, first, the claim being denied going forward. I think there was an awful lot of time that took place. The problem was that in 2012, Dr. Goffney was notified for the first time that the reason his accounts hadn't been paid was because they had been deactivated. He then spent some time between 2012 to 2000. Yeah, I understand the facts. But when, but presumably he would have not been paid for some early service around 2008. And I guess the enrollment credentialing is a very complicated area of law, but one would think you really have to stay on top of it. But that's not a criticism because the magistrate was clear the equities are in your favor. I've taken your time. What about the third point? Is your position that a doctor could wait a long, long time? Is there any limiting principle? You know, I don't know of any limiting principle. I know that Dr. Goffney is the outlier here. I don't think there is any other doctor in the United States under Medicare that has that many years under his belt. Yeah, thank you. Sure. So, let's see. I wanted to go back to just talking about one of the things where I think the problem is the district court erred in not, by throwing up its hands. I want to talk for a little bit about the deference that's appropriate in this case. These regulations, I guess what I would say is when you look at the regulations, you know, our position is that they are unambiguous because they make it clear that they work together. They create a regulation that specifically delineates between enrollment applications for some deactivations and not for others. Why would Section 520E require changing an effective date only upon filing a new enrollment application, and 540 make it clear that no enrollment application is needed where there's been a non-submission of a claim? Our view is that that's clear, and Kaiser, the relatively recent case on deference, says that if the law gives an answer, the court has no business deferring to any other reading, no matter how much the agency insists it would make more sense. You're quite right about Kaiser. As you say, we can't just throw up our hands just because the question is hard. But suppose that we do conclude that there is a genuine ambiguity in the regulations. What should we do then? Well, I think the first thing is that you're supposed to look at to see if there was any official position by the regulatory agency on that issue, if it's ambiguous. The Secretary has said that there's a case, this case Stern, RQD v. Stern, creates this official position. We don't think that that is the case at all. The board decisions are not official decisions of the agency. They don't play a role in whatever drafting regulations occur. And, in fact, in the case of Stern, it shows it can't be an official position because it actually relates to an application involving a change in location. Counsel, does it matter that the form itself is a common form for reactivation and new application? I don't know that it's a problem. Well, does that implicitly or explicitly contain an interpretation? Well, I don't think so. I think the fact that the form has many uses. You can terminate services. You can reapply after being convicted of a felony. You can say that there's nothing new in your application at all. Or you can apply as a new enrollee. All of those things you can do with this new application. So I don't think that it makes a difference. The fact is that the government has created one kind of omnibus form for all of these different things. It matters what you choose for that purpose. You're down to a little over two minutes, if you'd like to save rebuttal time. I would. Thank you. Good morning, Your Honors. Daniel Aguilar for the Secretary of Health and Human Services. May it please the Court. Just picking up on Judge Graver's question there. The form here, the application form, is sort of an all-purpose form. You use it for whatever relevant purpose you are for your enrollment in Medicare. You use it for initially enrolling, in which case you have to fill out that entire form. You can use it for recertifying your information when that's required or revalidating it. Accordingly, the regulations that CMS and HHF have promulgated here understand it to be an all-purpose form. Are reactivation, revalidation, and recertification essentially synonymous, or do they each have specific terms of our meaning into the regs? You have to recertify, for instance, when you've been deactivated, as happened here. Otherwise, you have to revalidate your information on a going-forward basis every several years. So this gentleman, he was never deemed ineligible. His privileges were never revoked. Correct me if I'm wrong. His partnership agreement stays intact, so he's never kicked out. It's very hard for me in that context where he just ends up checking a box to sort of say, I'm still here, that what's really happening is he's just getting restored. He doesn't have to start at square one again, and that would seem to be consistent with 540B. Correct me if I'm wrong. He doesn't have to use the enrollment form. If all that happened was he was inactive and he's going to tell HHS, I'm still here. No, that's what you're using the enrollment application for is the recertifying. Right, but 540B speaks of people who were decertified for reasons other than just inactivity, implying that if you're decertified simply because you've done nothing wrong but your account's been quiet, you wouldn't have to apply to recertify through an enrollment form. Doesn't 540B explicitly say that? No, what it explicitly says is new enrollment form. If you look at page three of our addendum, B1, as the regulation existed at the time, said, if you're deactivated for any other reason, you need to submit the new enrollment application, or we can require you to decertify that the enrollment information currently on file with Medicare is correct. Either way, that's using the enrollment application. It's whether you have to fill out the entire thing or whether you just check the box at the front. But either way, you're submitting the new enrollment application just like you would be under B2. Either way, you've had it deactivated. Your billing privileges have been deactivated for a period of time. And as the district court recognized, the question is, what's your effective date for when those billing privileges are reactivated? Note that B1 here says new enrollment application. If you go and look at the effective date regulation that's just on the earlier page of the addendum, it says you get your effective date, quote, the date of filing of a Medicare enrollment application. Not a new enrollment application, not one for initially enrolling in Medicare, but an enrollment application. And as we discussed in other parts of the regulation, for example, 515 and other ones, they talk about the enrollment application, about using that to recertify. And if you look at the excerpt of record at 752 and 53 here, you'll see the enrollment application that Dr. Goffney filed. And it's that all-purpose form. Now, if Medicare used different forms here, maybe the regulations would be written differently. But it's saying that. But it's not just, I mean, this is a doctor, inner city doctor, and as the magistrate painfully explains in the hearing, the equities here are awful. I mean, again, disagree with me if I'm wrong, but you don't dispute that a contractor for HHS advised him that if he did this route, he would get reimbursed. Well, so it doesn't really matter what the contractor said, but additionally, even if he's trying to get reimbursed for specific claims, he has a problem in this case. One is that he's never challenged his deactivation. He never rebutted that. He never sought to cure that. The other thing is he's not challenging. Are you sure of that? I thought he did rebut. I thought he did rebut. He may have lost. But as I understand it, when you appeal a denial of rebuttal, you can't get into federal court. But your position is the record shows he never tried to rebut the deactivation? If you give me a moment, I can pull up the E.R. on that word. I believe it was the board stated this on that. He has. I'm sorry. It's a little hard. I don't have it highlighted. But if you will, though, we can confirm that. Yeah, but. But let's say he does it. Let's say he successfully rebuts. He then would be entitled to reimbursement then. Correct. For claims that were timely filed separately, there's a regulation 42 CFR 424.44. And that says you get reimbursed for claims submitted within a year of providing services. So he hasn't challenged the denial of any particular claim. And it's currently 2021. So if he's going to try to say that he's entitled to reimbursement for services provided well more than a year ago, he's going to run into a problem with that regulation. Additionally, he hasn't sought in this case or in any other proceeding to challenge the denial of any particular claim. All he's seeking here is to get a different kind of effective date. But the way that the regulations work as a whole, as a scheme, is to make sure that you're timely and regularly submitting claims for reimbursement while you have effective billing privileges. If your billing privileges are deactivated and you submit a claim, Medicare isn't going to pay that because you don't have effective billing privileges. If you submit a claim that's been too late, Medicare isn't going to pay that because it gets more difficult to validate that and ensure that it's for eligible services by an eligible provider. And similarly, once you get recertified and you regain your Medicare billing privileges, the regulations set up a new effective date from which they limit the ability to bill retrospectively. Under 520, you get a new effective date for when you filed your enrollment application. And under 521, the very next regulation, it says we're limiting the ability of you to submit retrospective claims to just 30 days. And Medicare explains this is all to protect the public fist and to make sure that we're paying for those services that are eligible. So I think even if plaintiff's argument is taken at its best, what they're asking for is for 520D to be read to only apply to new enrollment applications. Now, that word new isn't there. So even if you were to disagree with our interpretation and say, well, it could be between the two, at that point, I think the regulation would be ambiguous. And that's the path that the district court took. At the point at which it's ambiguous, it could be applied only to new enrollment applications, or it could be applied to all of the applications for all of your general purposes. At that point, you enter the Supreme Court's decision in Kaiser. And you're trying to determine whether or not the agency's explanation of its own regulation here is reasonable and worthy of deference. And I think we easily satisfy that standard here. The agency's regulation is reasonable. It's going to how this regulation applies to recertification applications. May I ask you, so the appeals board decision in this case doesn't go through any analysis of the regulations. I mean, it implicitly adopts a view of how the regulations should be read that is consistent with the view you're outlining here. But in the absence of any sort of express discussion of how to read the regulations, why is that something that we can defer to under Kaiser? Well, because I don't think that the agency needs to go through an extensive discussion of exactly how the regulation applies when the agency believes on its face that its own application is fairly straightforward. Here, the agency well understands, as most practitioners do,  and that when you've been deactivated, you need a new date for when you're reactivated. And that's the date that's governed by 520, which is entitled Effective Date of Medicare Billing Privileges. As the district court recognizes, it's the only regulation that the agency has that talks about these kind of effective dates. So the fact that the departmental appeals board viewed this as straightforward and announcing its decision that, in that case, Dr. Stern gets a new effective date based on when he filed his recertification application just makes it straightforward. It doesn't necessarily need to be overly complicated. I guess I still don't see why we're looking at 520 at all, and I'm just going to draw you back to the exact text language of 540B1. So I'm going to read it aloud. I know you know it. When deactivated for any reason other than non-submission of a claim. Now, he was deactivated for non-submission of a claim. The provider must complete and submit a new enrollment application. Okay, so he didn't have to submit a new employment application. Therefore, his original employment effective date controls. How am I not reading the exact language correctly? Well, so if you've been decertified for another reason, right, then you need to fill out a new enrollment application. You need to complete all of the information in it. Yes, but he didn't that he was he was deactivated because of non-submission. Hence, no new enrollment application. Yes, Your Honor. And so then going down to the B2, it says that you need to, quote, recertify that the enrollment information currently on file with Medicare is correct or any missing information. The only way you can do that. So we call it. Doesn't that mean he can call up and just say, I'm still here? He's done nothing wrong. I'm not sure what the other mechanisms for this. The mechanism that the agency uses is the enrollment application. And that's what it is. That makes B1 surplusage if the only way you can do it is the way you don't have to do it if you are inactive. It's there must be another way. It's not surplusage, Your Honor, for the reason that, as I said, a new enrollment application, you have to fill out the entire form. If it's a recertification application, it's what's in the record here at 752-53. It's just checking the first box that. If I understand your argument correctly, it is that the regulation, although maybe oddly worded, distinguishes between new enrollment applications and other types of enrollment applications that are not new. Yes. That's why B1 refers to new. And you're right that the regulation was initially cumbersomely worded. And that's why when the agency revised it and it reads it now as it is on Addendum 4, it just cleans it up. It says you need to submit an enrollment application in all these circumstances. That's what we meant initially. We're sorry for the poor phrasing. We're trying to clarify that now. There's no substantive change between those two. But even if you thought that there was some difference between an enrollment application under B1 and B2, it still is the fact that he submitted an enrollment application. Even if you think that there should be a difference, the only regulation that governs effective dates here is 520. So I think, Judge Higginson, even taking your question and saying that the counterfactual that you're positing is correct, I think you end up where the district court was, saying that, well, he filed something that wasn't a new enrollment application. So does 520D control. I'm not certain about that. And if you're not certain about it, I think you're in the wrong. My memory is that Judge Wilmer was crystal clear in his factual finding that everyone understood this to not be an effort to re-enroll. It was just to restore something. But that's more remembering the hearing when it was suggested that, oh, well, they may have misunderstood that box to be a new enrollment. And I think if you look at ER20 and 28, that's the board in the ALJ's decisions, everybody understood this to be an application to reactivate his Medicare billing privileges. It's an enrollment application. But even if you think that, well, the agency was confused about what this particularly was, I think the evidence refutes that. But still the question is, what's his effective date? Because as I explained, the entire Medicare regulations here are made to ensure that we're only reimbursing claims of which we can be sufficiently certain that operating the scheme as a whole on hundreds of thousands or millions of claims a year, that we have the rules generally set up to make sure that all of the information is going to be accurate, that we're going to be able to validate it. But there's no suggestion in this record that the approximately $3 million worth of services weren't provided appropriately. It's not whether or not they were provided appropriately, it's that allegation of $3 million being provided. One was during a time when he didn't have billing privileges. Two was during a time when he didn't try to contest the deactivation. And three, he's not challenging the denial of a particular claim. If he wants to do that, he could, but he's going to run into the problem that under regulation 424.44, it's most likely going to be I ask too many questions, but factually, if you're suggesting that you can only do that within a year of denial, but he's saying that the record shows he wasn't even notified that he'd lapsed until 2013, that he would have been out of time for 2008, 2009, 2010, 2011, right? So that's not going to help him. Well, it's not clear that he was contesting any denial of claims or even submitting any claims. The record on this isn't clear because, again, the only issue that's present here is whether or not the effective date was set. I was going to ask about that. Does the record show, it would seem to me that if you submitted millions of dollars or thousands of dollars worth of claims and didn't get reimbursed, you would notice or your accountant would notice. So were these, do we know, I couldn't figure this out, but do we know from the record whether, in fact, these things were submitted and denied or whether they were ever submitted? I don't know that, Your Honor, because it's not part of the record. Plaintiff's counsel might have extra record knowledge that I don't. Well, if it's not in the record, then I didn't find something that wasn't there, so that's good, I guess. But exactly for all of these reasons that we've been discussing, I think the other Kaiser factors are clearly satisfied. It implicates the agency's substantive expertise about how to ensure that the claims are properly reimbursed and validated under its criteria, and it's a fair and considered judgment that came from a board decision well before Dr. Goffney here attempted to get a new effective date. Thank you, counsel. Mr. Smith, you have some rebuttal time remaining. Thank you. Thank you. I almost started talking with the mute on. There are a couple of points I wanted to make in response. First, the secretary makes the argument that this was another type of enrollment application, what he filled out, and I think it's important. The district court, in its opinion, at page 7, said no evidence could plausibly support the determination that what he filed was anything other than a revalidation application. It was not an enrollment application. I think that's clear to everyone. There's also no question about the services rendered. There's been no dispute. He presented these services, and you're right that there's nothing in the record about the specific claims, but there is information in the ALJ and the board hearings showing that he contested, he submitted these claims, and they were denied on the technicality that this situation was. Opposing counsel said you didn't rebut. Is he correct or wrong? That's absolutely wrong, and, in fact, the record shows that that's wrong. If you look at the ALJ, the initial ALJ opinion and the board opinion, both of them state that he is vigorously contesting those points. He is contesting those points, but did he use the administrative procedure of filing a rebuttal with the contractor? Yes, he did. He filed every rebuttal and exhausted his remedies on that, and I think that is apparent, as I say, from the ALJ opinion and the board decision that that information is reflected in the record. The other thing is that I want to talk a little bit about the change. Counsel, my colleague, talked about how Section 540 was changed, and I think it was a real misstatement on what happened. The regulation, if you, it's at Volume 84 of the Federal Regulations, page 47839, and it really says that the intent is not to make any substantive change. It's just to add some flexibility, but the intent and the purpose behind 540 remains ever the same, and I see I'm out of time unless there are any other questions. I'd like to thank Your Honor for indulging us in this and ask that the decision be reversed. Thank you. Thank you, Counsel. Your Honor, just because we had the factual question about whether or not he filed the rebuttal, I just wanted to direct the court to ER 19 and 20. Thank you. The case just argued is submitted. We appreciate very much the helpful arguments from both counsel. Thank you.
judges: Higginson, Graber, Miller